UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT ESPOSITO | : | |
| | : | |
| vs. | : | C.A. No.: 06-153S |
| | : | |
| HOME DEPOT U.S.A., INC., | : | |
| BLACK & DECKER, INC., DEWALT | : | |
| INDUSTRIAL TOOL CO., and XYZ CORP. | : | |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND FOR A FED. R. CIV. P. 54(b) DETERMINATION

Defendants Black & Decker (U.S.) Inc. (improperly named as Black & Decker, Inc. and Dewalt Industrial Tool Co.), and Home Depot U.S.A., Inc., hereby request the entry of summary judgment in their favor and asserts as grounds therefore that no material issue of fact is in dispute between the parties with regard to Defendant's liability to the Plaintiff and judgment must therefore be rendered in its favor as a matter of law. Defendant further requests a Rule 54(b) determination.

In support of this motion, this Court is respectfully referred to the memorandum of law filed contemporaneously herewith.

Black & Decker (U.S.) Inc. (improperly
named as Black & Decker, Inc. and
Dewalt Industrial Tool Co.), and
Home Depot U.S.A., Inc.
By their Attorneys,
CARROLL, KELLY & MURPHY

/s/ C. Russell Bengtson
C. RUSSELL BENGTSON #1233
One Turks Head Place, Suite 400
Providence, RI 02903
(401) 331-7272 Telephone
(401) 331-4404 Facsimile

CERTIFICATION

I hereby certify that on August 3rd, 2007 a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that Richard I. Abrams, Esq. rabrams@abrams-verri.com and Paul S. Cantor, Esq., psc@pcantorlaw.com will receive notice through the ECF system.

/s/ C. Russell Bengtson________________

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT ESPOSITO | : | |
| | : | |
| vs. | : | C.A. No.: 06-153S |
| | : | |
| HOME DEPOT U.S.A., INC.,<br>BLACK & DECKER, INC., DEWALT<br>INDUSTRIAL TOOL CO., and XYZ CORP. | :<br>:<br>: | |

MEMORANDUM OF DEFENDANTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AND FOR A
FED. R. CIV. P. 54(b) DETERMINATION

## I. INTRODUCTION

Defendants, Black & Decker (U.S.) Inc. (improperly named as Black & Decker, Inc. and Dewalt Industrial Tool Co.), and Home Depot U.S.A., Inc., (hereinafter Defendants), hereby move for Summary Judgment in their favor against the Plaintiff.

As grounds, these Defendants assert that the Plaintiff has failed to provide requisite expert testimony regarding the product in question, the alleged defect, the cause of the alleged defect, and a causal connection between any defect and the plaintiff's injury, as the sophistication of those subjects is beyond the common knowledge of an ordinary layperson. Therefore, the Plaintiff cannot sustain his action against these Defendants. The following facts are not in dispute:

## II. FACTS AND TRAVEL[1]

This matter revolves around an incident that occurred on March 31, 2003, in the Plaintiff's basement office at 4237 Post Road in East Greenwich, Rhode Island, while he attempted to cut a piece of wood with a Dewalt DW708 Sliding Compound Miter Saw (hereinafter "the saw"). See Answers to Interrogatories, # 22; see also, Complaint, ¶8. In the Plaintiff's Complaint, he alleged that Black & Decker and/or Dewalt manufactured, packaged and distributed the saw, and Home Depot, as the retailer of the saw, also distributed the saw. See Complaint, ¶¶6, 7. The Plaintiff's daughters, Karen and Susan Esposito, purchased the saw from Home Depot and gave it to the Plaintiff in September, 2002. See Answers to Interrogatories, #11, 27; see also Deposition, Pgs. 24-26. On at least one occasion before the day of the incident at issue, Plaintiff, without any difficulty, used the saw to cut a piece of wood. See Answers to Interrogatories, #28. He specifically recalls cutting a piece which was originally six to eight feet in length, and a quarter of an inch thick, to make it approximately 36 inches long. See Deposition, Pg. 42.

On March 31, 2003, Plaintiff attempted to make a "rip cut," by pulling the saw toward him, down the length of the 36-inch piece, which remained from the previous cut. See Deposition, Pg. 62, 94. The saw could not extend far enough to cut down the entire length of the 36-inch piece, so the Plaintiff pulled the saw as far as it could go, approximately 12 inches, and then raised the saw. See Id. at Pg. 85, 94; see also Answers

[1] The facts recited herein are contained in the Plaintiff's Complaint, (hereinafter "Complaint, ¶__"), Plaintiff's Answers to Interrogatories of defendant Black & Decker, (hereinafter "Answers to Interrogatories, # __ ", copy attached hereto as Exhibit A), Plaintiff, Robert Espisito's Deposition transcript, taken January 17, 2007 (hereinafter "Deposition, Pg. __", copy attached hereto as Exhibit B), Scheduling Order of January 18, 2007, copy attached hereto as Exhibit C, Scheduling Order of April 16, 2007, copy attached hereto as Exhibit D, and the Defense Expert Report, copy attached hereto as Exhibit E.

to Interrogatories, #22. The Plaintiff alleges that as he raised the saw with his right hand, and while holding the piece of wood with his left hand, the saw blade simultaneously lifted the wood he was holding. See Answers to Interrogatories, #2, 22. The Plaintiff speculates that as the blade, wood, and his hand were rising, something went awry and his left hand came into contact with the unguarded blade. See Id. at #22. Plaintiff has inferred that his hand was able to come into contact with the spinning blade because the blade guard had not worked properly, and that it otherwise malfunctioned. See Id. at # 2, 22; see also Deposition, Pg. 51.

On March 16, 2006, Robert Esposito filed a 10 count Complaint in the Rhode Island Superior Court, Kent County, which has since been removed to this Court, based on diversity jurisdiction. The Plaintiff's Complaint alleges that he was "severely injured as a direct and proximate result of the failure of the blade guard to properly engage and the malfunction of the saw," which was "designed and/or packaged, manufactured, sold and/or marketed, assembled and/or distributed,'" by Defendants. See Complaint, ¶¶9,11.[2]

In his Answers to Interrogatories, dated October 5, 2006, Plaintiff stated, "My attorneys have not yet determined which, if any, expert witnesses will be called to testify. This answer will be supplemented at a later date when such decisions are made." See Answers to Interrogatories, #7. In the present case, the initial Scheduling Order, of January 18, 2007, required the Plaintiff to disclose experts on or before April 12, 2007. On April 16, 2007, the time to complete discovery was extended, which gave the Plaintiff

[2] Because this case was removed to the United States District Court for the District of Rhode Island based on diversity jurisdiction, and the Plaintiff has only asserted state law claims, Rhode Island substantive law shall apply. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1930); see also Univ. Emergency Med. Found. v. Rapier Inv., Ltd., 197 F.3d 18, 19 (1st Cir. 1999) ("Because we sit in diversity, Rhode Island common law governs this dispute."). Therefore, this Court must consider Rhode Island's treatment and requirements with regard to the Plaintiff's claims, and grant Summary Judgment in favor of Defendant because of Plaintiff's failure to timely identify experts and show reliance on Defendants' skill or judgment.

up to and including June 21, 2007 to disclose experts. That deadline too has passed and to date, the Plaintiff has not identified any experts.

Defendants bring this Motion for Summary Judgment, and assert that as a matter of law, the Plaintiff's claims fail because 1) he has not timely provided expert testimony where the matters at issue are beyond the common knowledge of an ordinary layperson, and 2) he did not rely on Defendants' skill or judgment.

## III. MOTION FOR SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard to be applied in ruling on a motion for summary judgment. Pursuant to Rule 56(c):

> "A district court may order summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Grant's Dairy-Maine, LLC v. Comm'r of Maine Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000) (citing Fed. R. Civ. P. 56(c)).

Further, according to Rule 56(e)(2):

> "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - - by affidavits or as otherwise provided in this rule - -set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Consequently, to defeat a Motion for Summary Judgment, the non-moving party must come forward with specific facts that create a genuine and triable question for resolution by the trier of fact. See Fed. R. Civ. P. 56.

## IV. ARGUMENT

### A. The Plaintiff Has Failed to Identify Experts

The Plaintiff's 10 count Complaint separates the allegations as to the Defendants into a number of theories: Negligence, Res Ipsa Loquitur, Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose, and Strict Products Liability.[3] Without expert testimony as to the applicable standards of care and as to causation, the Plaintiff's claims of Negligence, Res Ipsa Loquitur, Breach of Warranties of Merchantability and Strict Products liability must fail.

#### 1. Negligence

In Rhode Island, to sustain a negligence action, a plaintiff must:

> "establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.' Moreover, expert testimony is required to establish any matter that is not obvious to a lay person and thus lies beyond common knowledge.'" Mills v. State Sales, Inc., 824 A.2d 461, 67-68 (R.I. 2003) (quoting Jenard v. Halpin, 567 A.2d 368, 370 (R.I. 1989); Boccasile v. Cajun Music Ltd., 694 A.2d 686, 690 (R.I. 1997). (emphasis added).

Further, Rhode Island routinely requires expert testimony as to the standard of care, breach of that standard, and causation, when the matters alleged are outside the common knowledge of an ordinary lay person. See Mills at 468 (citing Fed. R. Evid. 702). The Rhode Island courts, for example, have required expert testimony in cases involving: 1) toxic fumes, See Id.; 2) shopping carts, See Olshansky v. Rehrig Int'l, 872 A.2d 282, (R.I. 2005); 3) medical malpractice, See Boccasile v. Cajun Music Ltd., 694

[3] Plaintiff has asserted the following claims against Dewalt and/or Black &Decker: Res Ipsa Loquitur, Breach of Implied Warranty of Merchantability, and Strict Products Liability. Plaintiff has asserted a Negligence claim against both Black & Decker and Dewalt. Plaintiff has asserted the following claims against Home Depot and XYZ Corp.: Negligence, Res Ipsa Loquitur, and Strict Products Liability.

A.2d 686 (R.I. 1997); 4) warnings, See Raimbeault v. Takeuchi Mfg. (U.S.), Ltd., 772 A.2d 1056, 1063 (R.I. 2001).

In Mills, the plaintiff, a pediatrician, contacted the Department of Health (DOH) concerning fumes allegedly emanating from a newly installed carpet in her office. See Mills at 464-65. In response, the DOH sent an inspector who tested the air quality and the carpet itself. See Id. at 465. The tests did not reveal the presence of any toxins, however the plaintiff claimed that the fumes contaminated her property. See Id. at 465. The plaintiff alleged that the inspector's "negligent testing of the office and the carpet led her to prolonged exposure to the alleged toxins," but failed to present expert testimony in support of her contention.[4] Id. at 465, 68.

The Rhode Island Supreme Court required the plaintiff in Mills to present expert testimony as to the standard of care, deviation, and causation, because the matters alleged against the inspector were not obvious to a lay person. See Id. at 467, 68. The court affirmed summary judgment in favor of the defendant, because without an expert, the plaintiff could not "establish the standard of care expected of [the inspector]... any evidence that [the inspector] deviated from that standard... or that [the inspector's] alleged negligence caused her injuries. See Id. at 468. These three areas of expert testimony are discussed as follows:

[4] In addition, the plaintiff's experts as to other defendants were excluded because "their opinions could not withstand scrutiny under the standards identified in *Daubert* and *DiPetrillo*..." See Id. at 467. After determining that the trial court correctly excluded the testimony, the court reiterated that without expert testimony plaintiff's claims against the other defendants fail as well. See Id.

A) Standard of Care

In this matter, the plaintiff needed an expert to testify as to the standard of care for design, manufacturing, packaging, selling and/or marketing, assembling and/or distributing the saw. See Complaint, ¶¶9,11. Like the plaintiff in Mills, the plaintiff here must be required to identify an expert to testify as to the applicable standard of care concerning matters which are outside the common knowledge of an ordinary lay person. The process of designing a saw, an analysis of the available mechanisms for guarding the blade and protecting the user, and the content of instructions or warnings contained within the packaging materials are all part of the analysis an expert would be required to present to establish the standard of care. The standard of care applicable to these defendants may very well be defined by a code or regulation. This determination regarding complex and technical regulations would however have to be made by an expert, especially since the Plaintiff himself is not aware of any. See Answers to Interrogatories, #8. Such information is simply not "within the ken" of the average juror and expert testimony is required. Therefore, the plaintiff cannot prove the first element of negligence.

B) Breach of Standard of Care

Here, the plaintiff would also need to present expert testimony that the Defendants breached the applicable standard of care for designing, manufacturing, packaging, selling and/or marketing, assembling and/or distributing the saw. See Complaint, ¶¶9,11. Plainitff has been unable to articulate what action, if any, of the defendants constitute a breach of the standard of care. In fact, when asked through interrogatories to identify any act of omission or commission by which the defendants

were negligent, the best that the Plaintiff could say is, “I don’t know.” See Answers to Interrogatories, #6. Furthermore, he responded in the same manner when asked to identify any statute, code, or regulation that the Defendants may have breached. See Answers to Interrogatories, #8.

Clearly, if the plaintiff himself is not clear on the manner in which the standard of care was breached, it will be impossible for the jury to determine the existence of a breach without the assistance of an expert. This Plaintiff, like the plaintiff in Mills and Raimbeault needs expert testimony to establish a breach of the applicable standard of care. Therefore, he cannot sustain his negligence claim.

C) Causation

Even assuming the Plaintiff can establish the standard of care and breach without an expert, he must still leap the hurdle of causation. The Plaintiff’s Complaint states that his “injury was the direct and proximate cause of the negligence of the defendants,” in various respects. See Complaint, ¶¶15(a)-(e), 44(a)-(e). Plaintiff himself is not clear on the manner in which he became injured. Because, as he has observed, the accident “happened so fast,” he can only speculate on the way his injury occurred. See Deposition, Pg. 50; see also Answers to Interrogatories, #6.

The Plaintiff’s deposition testimony makes it abundantly clear that he can only speculate as to causation. He states things such as the guard “probably” did not retract, “This probably came back together,” and “It must of grabbed the blade, that might of gave it the kick.” See Deposition, Pg. 91; see also Deposition at Pg. 92.

The Plaintiff's claims in the present case, like the claims involved Mills, are not "obvious to a lay person." An ordinary lay person is neither familiar with the proper handling of the saw, the mechanics of the saw, nor the range of circumstances that can cause injury while using the saw. The only way the Plaintiff can prove that a defect in the saw was the proximate cause of his injury is through expert testimony as to 1) the manner in which the accident happened, 2) that this was the result of some defect in the saw, and 3) that the defect caused the plaintiff's injuries. Here, like Mills, no experts have been identified that can provide the assistance necessary to link the Plaintiff's damages to his allegations. The vague and ambiguous nature of Plaintiff's own testimony highlights the need for expert assistance. The plaintiff's claim involves maters outside the common knowledge of an ordinary lay person. Plaintiff's failure to present expert evidence is therefore fatal to that claim.

2. Res Ipsa Loquitur

The plaintiff has also asserted a Res Ipsa Loquitur claim against each defendant. The doctrine of Res Ipsa Loquitor "establishes inferential evidence of a defendant's negligence," which in this case must first be established through expert testimony. See Olshansky at 288 (emphasis added); see also Makuc v. American Honda Motor Company, Inc., 835 F.2d 389 (1st Cir. 1987). The Rhode Island Supreme Court has adopted the approach taken by the Resatement (Second) of Torts § 328 (D), at 156 (1965) to determine when Res Ipsa Loquitur shall be applied. See Parillo v. Giroux Co., 426 A.2d 1313, 1320 (R.I. 1981).

Section 328 provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when:

a. the event is of a kind which ordinarily does not occur in the absence of negligence

b. other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

c. the indicated negligence is within the scope of the defendant's duty to the plaintiff

In Makuc v. Am. Honda Motor Co., Inc., the court required the plaintiff to provide expert testimony concerning the alleged defect, and causation, because the matters involved were sophisticated. In that case, the plaintiff was injured while riding a motorbike. See Makuc at 391. The plaintiff offered expert testimony concerning an alleged defective axle on the motorbike, but failed to present any expert testimony as to causation. See Id. at 392. The plaintiff argued that the jury should be allowed to infer that the defendant caused the accident. See Id.

In Makuc, the First Circuit found that a motorbike is not a simple device, and its "sophistication precludes the jury from drawing an inference of causation based on common knowledge." See Id. More importantly, the court found that the trial justice was correct in refusing to instruct the jury on the theory of Res Ipsa Loquitur and requiring expert testimony on the issue of causation. See Id.

Similarly, the present matter is not the type of case that lends itself to the doctrine of Res Ipsa Loquitur. In the present matter, the product at issue is complicated, as evinced by the Defendants' expert's report:

> "The subject unit is a 12" Sliding Compound Miter Saw powered by a series universal motor. The motor drives the blade by means of a single reduction parallel axis gear set and a single poly vee belt reduction. The blade is guarded by a fixed die cast aluminum upper guard, and a movable lower guard that is molded of polycarbonate resin... The lower guard is positioned by an integral molded pilot diameter which is supported by a diameter on the gear case that is concentric with the center of the saw arbor." See Defense Expert Report.

As was required in Makuc, the Plaintiff here must also be required to present an expert familiar with the mechanics and proper handling and use of saws as well to examine the record and provide an opinion as to some defect, if any. Once the Plaintiff has offered such evidence, he then must present expert evidence that the alleged defect proximately caused his injury. The Plaintiff cannot merely infer causation. See Makuc at 391. Since the Plaintiff has failed to timely supply requisite expert evidence of causation and to negate other possible causes (including Plaintiff's own conduct), his Res Ipsa Loquitur claim must also fail.

3. Strict Products Liability

In Rhode Island, to sustain a products liability action, a plaintiff must satisfy a five-part test. See Raimbeault v. Takeuchi Mfg. (U.S.), Ltd., 772 A.2d 1056, 1063 (R.I. 2001); see also Crawford v. Cooper/T. Smith Stevedoring Co., 14 F.Supp.2d 202, 211 (D.R.I. 1998). According to that test, a plaintiff must prove the following:

> (1) that there was a defect in the design or construction of the product in question; (2) that the defect existed at the time the product left the hands of the defendant; (3) that the defect rendered the product unreasonably dangerous, and by unreasonably dangerous it is meant that there was a strong likelihood of injury to a user who was unaware of the danger in utilizing the product in a normal manner; (4) that the product was being used in a way in which it was intended at the time of the accident; and (5) that the defect was the proximate cause of the accident and plaintiff's injuries." Raimbeault at 1063; see also Crawford at 211.

In Raimbeault, the plaintiff brought a negligence and products liability action after being injured while operating a track driven excavator. See Id. at 1059. The plaintiff brought the action against the manufacturer of the excavator, but failed to present any evidence concerning a defect or causation.[5] See Id. at 1059, 63. The Rhode Island Supreme Court ruled that, "Without putting forth any evidence about the condition of the excavator at the time of its manufacture (that is, at the time it left the defendant's hands) or about proximate cause (that is, that the failure to warn had caused Raimbeault's accident and injuries), plaintiff's may not maintain their products liability action." Id. at 1063. Therefore, the plaintiff could not satisfy the five-part test.

Similarly, in Olshansky v. Rehrig Int'l the plaintiff alleged he was injured at Ann & Hope when the shopping cart he was pushing separated from its wheels, which caused him to fall to the floor. Olshansky at 286. In Olshansky, the hearing justice ruled that "without presenting expert testimony, plaintiffs could not establish whether a defect existed at the time the shopping cart left defendant's possession or whether that defect caused Mr. Olshansky's injuries." Id. at 287. The plaintiff appealed, and contended that,

[5] Plaintiff in Raimbeault attempted to introduce such evidence, however, the expert testimony was stricken as the expert did not have the requisite skill, knowledge or training to testify in those areas as applicable to excavators.

"expert testimony was not required because shopping carts are within the common understanding of jurors." Id. The court disagreed with the plaintiff, and stated:

> "Although average lay persons use shopping carts every day, we conclude that only an expert who understands the mechanics of constructing such a cart could understand and explain the mechanics of the cart and whether a defect proximately caused an injury such as Mr. Olshansky's... An expert familiar with shopping carts would be needed to explain to a jury what defect, if any, was present; whether that defect was attributable to manufacture, design, maintenance or some other factor; and whether such a defect could cause the harm Mr. Olshansky suffered." Id. (emphasis added).

Consequently, the court affirmed defendant's Motion for Summary Judgment as to the plaintiff's strict liability claim, because the plaintiff failed to present expert testimony regarding matters outside the common understanding of jurors. See Id.

Therefore, according to the Rhode Island Supreme Court rulings in Raimbeault and Olshansky, to sustain a products liability action involving matters not obvious to a lay person, a plaintiff must put forth expert evidence of the condition of the product at issue at the time it left the defendant's hands and that the condition of the product proximately caused the plaintiff's injuries. Certainly, if the Rhode Island Supreme Court requires an expert to expound on a defect in the design and/or manufacture of a common shopping cart, the Plaintiff must present an expert to explain the complexities of the saw at issue.

To meet his burden of proof, the plaintiff must present an expert "who understands the mechanics of constructing such a [saw]" and who is competent to provide an opinion as to the mechanics of the saw. See Olshansky at 287. He must further be able to state "what defect, if any, was present; whether that defect was

attributable to manufacture, design, maintenance or some other factor; and whether such a defect could cause the harm [Plaintiff] suffered." See Id. Because Plaintiff has not timely identified any expert to provide assistance with regard to these subjects, the Plaintiff's Strict Products Liability claim must also fail.

4. Breach of Implied Warranties of Merchantability

In addition to his claims of Negligence, Res Ipsa Loquitur, and Strict Products Liability, the Plaintiff also relies upon the theory of Breach of Implied Warranties of Merchantability. In the Complaint, the Plaintiff alleges that the saw "was not fit and suitable for its intended purpose... and not of merchantable quality." Complaint, ¶¶30-31.

Rhode Island General Laws § 6A-2-314 sets forth the standards to be applied for breach of implied warranty of merchantability claims. Section 6A-2-314 provides:

> (1) a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.
>
> (2) Goods to be merchantable must be at least such as:
>
> a. Pass without objection in the trade under the contract description; and
> b. In the case of fungible goods, are of fair average quality within the description; and
> c. Are fit for the ordinary purposes for which such goods are used; and
> d. Run with the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and
> e. Are adequately contained, packaged, and labeled as the agreement may require; and
> f. Conform to the promises or affirmations of fact made on the container or label if any. (emphasis added).
>
> R.I. Gen. Laws § 6A-2-314; see also Olshansky at 290.

In Olshansky v. Rehrig Int'l the plaintiff also brought a breach of implied merchantability claim, pursuant to § 6A-2-314. Olshansky at 286. The Rhode Island Supreme Court dismissed the plaintiff's breach of implied merchantability claim pursuant to § 6A-2-314, and noted that, "the key to determining liability under the theory of breach of implied warranty is whether the seller breached its duty to deliver the product in the proper condition." Olshansky at 291.

The plaintiff in Olshansky failed to establish that the shopping cart "left defendant's control in a condition below 'fair average quality.'" Id. In that case, the Rhode Island Supreme Court granted defendant's Motion for Summary Judgment as to the plaintiff's breach of implied warranty of merchantability claim, because "nothing on the record indicate[d] that when the shopping cart was delivered from [the manufacturer] to Ann & Hope it 'would not have passed without objection in the trade.'" Id. It is widely accepted that what would have passed without objection in the trade as well as customs and practices of an industry are subjects that require expert testimony. See Pelletier v. Main Street Textiles, 470 F.3d 48, 55 (1st Cir. 2006).

In the present case, like Olshansky, the plaintiff cannot meet his burden under § 6A-2-314, since he has offered no evidence that the saw would not have passed without objection in the trade when it was delivered. As noted above, the record shows the Plaintiff owned the saw for approximately 6 months and used the saw at least once without difficulty prior to the incident at issue. See Answers to Interrogatories, #28. An ordinary lay person is not knowledgeable in what would pass without objection in the specialized trade of power saws, let alone a sliding compound miter saw. See Id.; see also Mills at 468 ("expert testimony is required to establish any matter that is not obvious

to a lay person and thus lies beyond common knowledge.) Therefore, in accordance with the Rhode Island Supreme Court rulings in Olshansky, Pelletier, and Mills, the Plaintiff cannot sustain his breach of warranty of merchantability claim, because he has not offered expert evidence to demonstrate non-compliance with § 6A-2-314.

B. Plaintiff Did Not Rely on Defendants' Skill or Judgment

Plaintiff's claims for Breach of Implied Warranties of Fitness for a particular Purpose fail because plaintiff can produce no evidence that he relied on Defendants' skill or judgment in selecting the product. Rhode Island General Law, § 6A-2-315 sets forth the standard to be applied in claims of Breach of Implied Warranty – Fitness for a Particular Purpose. R.I.G.L. § 6A-2-315; see also Oberlander v. General Motors Corp., 798 A.2d 376, 379 (R.I. 2002). The law of Implied Warranties of Fitness for a Particular Purpose in its simplest form requires the Plaintiff to prove that he relied on the seller's skill or judgment to select or furnish goods for the buyer's particular purpose. See Id.

The record in this case reflects that the plaintiff cannot meet his burden under § 6A-2-315, simply because he has offered no evidence of relying on the sellers skill or judgment. In his deposition, Plaintiff stated the following: (See Deposition, Pg. 24-26).

Q: When you were at Home Depot with your partner and you looked at the saw, did you talk to anybody at Home Depot about the saw?
A: No

Q: Did you do any research on the saw at all at any time?
A: No

Q: Do you know if Karen [Plaintiff's daughter] had any conversations with anybody at Home Depot concerning the use of the saw or what it could do?
A: No

Q: At any time before the incident did you talk to anybody at Home Depot concerning the saw and its operation?

A: No

Q: Talk to anybody connected with Dewalt or Black and Decker concerning the saw or its operation?
A: No

The unequivical evidence in the record indicates that the Plaintiff did not rely on the Defendants' skill or judgment prior to the incident at issue. Therefore, the Plaintiff's Breach of Implied Fitness for a Particular Purpose claim must also fail.

## V. CONCLUSION

Under the Federal Rules of Civil Procedure, and the applicable Rhode Island statutory and case law, the Plaintiff's claims must fail because he has failed to present expert evidence, and has shown no reliance on the Defendants' skill or judgment. Because the Plaintiff has failed to abide by this Court's Scheduling Order, the Defendants respectfully request that its Motion for Summary Judgment be granted, that judgment enter in its favor as a matter of law on all counts of the Plaintiff's Complaint, and also determination for final judgment, pursuant to Fed. R. Civ. P. 54(b), as there is no just reason for delay.

Black & Decker (U.S.) Inc. (improperly named as Black & Decker, Inc. and Dewalt Industrial Tool Co.), and Home Depot U.S.A., Inc.
By their Attorneys,
CARROLL, KELLY & MURPHY

/s/ C. Russell Bengtson
C. RUSSELL BENGTSON #1233
One Turks Head Place, Suite 400
Providence, RI 02903
(401) 331-7272 Telephone
(401) 331-4404 Facsimile

CERTIFICATION

I hereby certify that on August 3rd, 2007 a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that Richard I. Abrams, Esq. rabrams@abrams-verri.com and Paul S. Cantor, Esq., psc@pcantorlaw.com will receive notice through the ECF system.

/s/ C. Russell Bengtson_______________